**David B. Newdorf**, Admitted Pro Hac Vice
NEWDORF LEGAL
david@newdorf.com
220 Montgomery Street, Suite 1850
San Francisco, California 94104
Telephone:   (415) 357-1234
Facsimile:    (866) 954-8448

**Elizabeth Schwartz**, OSB No. 961121
schwartz.libby@gmail.com
6312 SW Capitol Hwy, #175
Portland, OR 97239
Telephone:   (503) 452-5368
Facsimile:    (503) 961-1495

Attorneys for Defendants/Counterclaimants
JANE BERNSTEIN, MOHAMMAD
MORTAZAVI, LAWRENCE BENNETT,
ROBERT A. ELLIS, JAWAD KAMEL,
ROBERT FERRI, MICHAEL MANSOURI,
and HOSSEIN ESLAMBOLCHI

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KENTROX, INC.,<br><br>            Plaintiff,<br><br>vs.<br><br>JANE BERNSTEIN, MOHAMMAD MORTAZAVI, LAWRENCE BENNETT, individually and on behalf of the LAWRENCE BENNETT REVOCABLE TRUST, ROBERT A. ELLIS individually and on behalf of the ROBERT A. ELLIS REVOCABLE TRUST, JAWAD KAMEL, ROBERT FERRI, and JOHN DOES 1-10,<br><br>            Defendants. | Case No. 3:13-cv-01492-ST<br><br>**DEFENDANTS' COUNTERCLAIM FOR DAMAGES, RESCISSION, AND DECLARATORY RELIEF;**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Judge:       Hon. Janice M. Stewart |
| JANE BERNSTEIN, MOHAMMAD MORTAZAVI, LAWRENCE BENNETT, individually and as trustee of the LAWRENCE BENNETT REVOCABLE TRUST, ROBERT A. ELLIS individually | |

and as trustee of the ROBERT A. ELLIS REVOCABLE TRUST, JAWAD KAMEL, ROBERT FERRI, MICHAEL MANSOURI, and HOSSEIN ESLAMBOLCHI,

    Counterclaimants,

vs.

KENTROX, INC., INVESTCORP TECHNOLOGY VENTURES II, L.P, a Cayman Islands limited partnership; INVESTCORP TECHNOLOGY VENTURES II, L.P, a Delaware limited partnership; ITV II (II) L.P., a Cayman Islands limited partnership; WESTELL, INC., a Delaware corporation; ANAND RADHAKRISHNAN; RICHARD CREMONA, and DOES 1 through 25, inclusive,

    Counterdefendants

Counterclaimants JANE BERNSTEIN, MOHAMMAD MORTAZAVI, LAWRENCE BENNETT, individually and on behalf of the LAWRENCE BENNETT REVOCABLE TRUST, ROBERT A. ELLIS, individually and on behalf of the ROBERT A. ELLIS REVOCABLE TRUST, JAWAD KAMEL, ROBERT FERRI, MICHAEL MANSOURI, and HOSSEIN ESLAMBOLCHI (collectively, "Counterclaimants" or "Minority Shareholders") allege as follows:

## INTRODUCTION

1.     Counterclaimants were the Minority Shareholders of Kentrox, Inc. ("Kentrox"), a successful telecommunications company. The Minority Shareholders knew the risk of investing in a privately held company. They knew that they could lose their money if the Company failed. What the Minority Shareholders never expected was that their investment might be wiped out even though the Company was successful. And Kentrox was a thriving, profitable and growing company at the time of the transaction that wiped out their investment.

2. On or about April 1, 2013, Westell, Inc. acquired Kentrox in a $30 million cash sale, which was structured as a merger. After final distribution of amounts now held in escrow, the majority shareholders (affiliated with the Investcorp Group) expect to receive a total of more than $23 million – recouping their investment in Kentrox's common and preferred stock. The top management and employees of Kentrox have received payouts of more than $5 million through their ownership of common stock, stock options and a senior employee "carve out" plan.

3. In 2011 and 2012, the Minority Shareholders were told they could expect to receive $6.54 per share for their Preferred Series A stock if the company were sold for $30 million. As a result of a scheme orchestrated by Counterdefendants, the Minority Shareholders received less than 14 cents per share. These shareholders lost 97 percent of their out-of-pocket investment in the Company and were the only group of investors to lose money as a result of the sale.

4. Following their exercise of Dissenters' Rights under ORS 60.551 *et seq.*, Kentrox filed a petition for an appraisal action in this Court. The Minority Shareholders now bring these Counterclaims arising out of the same transaction.

## JURISDICTION

5. The Court has supplemental jurisdiction over this Counterclaim under 28 U.S.C. § 1367 because the claims alleged herein arise out of the transaction or occurrence that is the subject matter of Kentrox's complaint in this action.

## VENUE

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to this Counterclaim took place in substantial part in this district.

## PARTIES

7. Jane Bernstein is an adult female who resides in and is a citizen of the State of California. Until the merger, she owned shares of Kentrox Preferred Series A stock.

8. Mohammad Mortazavi is an adult male who resides in and is a citizen of the State of California. Until the merger, he owned shares of Kentrox Preferred Series A stock.

9. Lawrence Bennett is an adult male who resides in California and Florida and who is a citizen of the State of Florida. Bennett is the trustee of the Lawrence Bennett Revocable Trust, and until the merger, he owned shares of Kentrox Preferred Series A Stock in that capacity.

10. Robert A. Ellis is an adult male who resides in and is a citizen of the State of California. Ellis is the trustee of the Robert A. Ellis Revocable Trust, and until the merger, he owned shares of Kentrox Preferred Series A Stock in that capacity.

11. Jawad Kamel is an adult male who resides in Turkey. Until the merger, he owned shares of Kentrox Preferred Series A stock.

12. Robert Ferri is an adult male who resides in and is a citizen of the State of California. Until the merger, he owned shares of Kentrox Preferred Series A stock.

13. Michael Mansouri is an adult male who resides in and is a citizen of the State of Maryland. Until the merger, he owned shares of Kentrox Preferred Series A stock.

14. Hossein Eslambolchi is an adult male who resides in and is a citizen of the State of California. Until the merger, he owned shares of Kentrox Preferred Series A stock.

15. Kentrox, Inc., is an Oregon corporation with its principal place of business in Ohio. As of April 1, 2013, Kentrox, Inc., is a wholly-owned division of Westell, Inc.

16. Westell, Inc. ("Westell") is a Delaware corporation with its principal place of business in Illinois.

17. Investcorp Technology Ventures II, L.P., ("Investcorp 1") is a limited partnership organized under the laws of the Cayman Islands. Until the merger, Investcorp 1 owned Series A Preferred Shares, Series B Preferred Shares and common stock of Kentrox.

18. Investcorp Technology Ventures II, L.P., ("Investcorp 2") is a limited partnership organized under the laws of Delaware. Until the merger, Investcorp 2 owned Series A Preferred Shares, Series B Preferred Shares and common stock of Kentrox.

19. ITV II (II) L.P. ("Investcorp 3") is a limited partnership organized under the laws of the Cayman Islands. Until the merger, Investcorp 3 owned Series A Preferred Shares, Series B Preferred Shares and common stock of Kentrox.

20. Anand Radhakrishnan is an adult male who, on information and belief, is a resident and citizen of the State of New York. Radhakrishnan is a managing director and principal of the Investcorp Group and Investcorp Technology Partners, and until the merger, was a member of the Board of Directors of Kentrox. On information and belief, Radhakrishnan was also a manager of Investcorp 1, Investcorp 2 and Investcorp 3.

21. Richard Cremona is an adult male who, on information and belief, resides in and is a citizen of the State of Ohio. Until the merger, Cremona was the President and CEO of Kentrox and a member of its Board of Directors. Since the merger, Cremona has been the Senior Vice President and Chief Operating Officer of Westell.

22. The true names and capacities of Does 1 through 25, inclusive, are unknown to Counterclaimants, who therefore sues such counterdefendants by fictitious names. Counterclaimants are informed and believe that each fictitiously named counterdefendant is in some manner responsible for the events and happenings herein referred to, and caused damage to them. When Counterclaimants ascertain the true names and capacities of Does 1 through 25, inclusive, Counterclaimants will ask leave of this Court to amend this Counterclaim by setting forth the same.

## FACTUAL ALLEGATIONS

23. Investcorp 1, Investcorp 2 and Investcorp 3 were private equity investment funds managed by the Investcorp Group, a global manager of alternative investment products, for private and institutional clients. Investcorp Group has private and institutional clients in

the Middle East, North America and Europe. It has offices in New York City, Bahrain and London. Investcorp Group offers investments in corporate investment, real estate and hedge funds, and has arranged investments with a combined value of approximately $44 billion. Counterclaimants are informed and believe that Investcorp 1, Investcorp 2 and Investcorp 3 (collectively, "Investcorp") had overlapping ownership and management.

24.     Investcorp was the majority shareholder of Kentrox. It owned approximately 90 percent of the common stock, Series A Preferred shares and Series B Preferred shares. Radhakrishnan, a principal of Investcorp Group, was a representative of Investcorp on the Board of Directors of Kentrox.

25.     Counterclaimants were the Minority Shareholders of Kentrox and the only investors other than Investcorp, employees, former employees, and officers of Kentrox. Originally, the Minority Shareholders were individual investors in Catapult Technology Fund 2005, LLC and Catapult Technology Ventures LLC (collectively, "Catapult"). In 2009, the Kentrox shares were distributed by Catapult to the individual Minority Shareholders.

26.     The Minority Shareholders participating in this action had the following investment in Kentrox Preferred Series A Shares:

|  | Shares | Price/Share | Total Consideration |
|---|---|---|---|
| Robert Ellis, trustee | 98,133 | $ 4.32 | $ 423,787.36 |
| Lawrence Bennett, trustee | 45,772 | $ 4.32 | $ 197,666.38 |
| Jawad Kamel | 22,776 | $ 4.32 | $ 98,358.16 |
| Mohammad Mortazavi | 22,776 | $ 4.32 | $ 98,358.16 |
| Jane Bernstein | 11,398 | $ 4.32 | $ 49,222.26 |
| Michael Mansouri | 5,694 | $ 4.32 | $ 24,589.54 |
| Hossein Eslambolchi | 5,694 | $ 4.32 | $ 24,589.54 |
| Robert Ferri | 1,199 | $ 4.32 | $ 5,177.88 |
| **Total** | **212,243** |  | **$ 916,889.76** |

27.     Management of Kentrox and the investors were optimistic about Kentrox's future and the value of the Company. Kentrox was a global leader in providing intelligent

telecom network site management solutions, such as remote site monitoring, management and control. It had significant customers in the telecommunications industry both in the U.S. and abroad. The Company had excellent momentum in the marketplace.

28.     For the 12 months ended December 31, 2012, Kentrox reported $29.15 million in revenue, which was up significantly from $20.58 million in revenue in 2011. Its products were high margin and Kentrox was solidly profitable in 2012, with net income of $1.8 million. At the time of the merger, management expected Kentrox to produce a double-digit growth rate in 2013 and sustain solid growth and profitability into the future.

29.     While the Minority Shareholders expected to eventually cash out, at a profit, there was no exigency requiring that Kentrox be sold, or if a sale was desired, that the Company be sold immediately. Kentrox was prospering and had sufficient capital to finance its growth. It had a solid balance sheet and could access additional capital as needed.

30.     From the time the shares were issued to the time of the merger, as stated in the Company's Articles of Incorporation (including the Third Amended and Restated Articles of Incorporation in effect at the time of the merger), the Preferred Series A shares were entitled to a preferential payout upon liquidation in the amount of two times the purchase price. This liquidation preference would be paid in the event of "any liquidation, dissolution or winding up of the Corporation" (Article 4(D)(2) of the Third Amended and Restated Articles of Incorporation) and was subject only to greater priority for payouts to holders of Preferred Series B shares.

31.     The Articles of Incorporation also provided that the preferred shares could be converted to common shares by a majority vote of shareholders – i.e., by Investcorp. However, the Minority Shareholders were led by Counterdefendants, and each of them, to believe that the right of conversion to common stock would not be exercised in connection with a sale.

32. In 2011 and 2012, the Company presented sales scenarios to the Minority Shareholders to show how much they would receive – depending on the price paid for the Company – in the event of a cash sale. These projections were calculated based on the liquidation preference due to shareholders under the Articles of Incorporation. The chart below shows the projected proceeds to the various classes of shareholders and participants, at various sales prices, as represented by Kentrox:

| Total Cash Sales Price | $ 20,000,000.00 | $ 25,000,000.00 | $ 30,000,000.00 | $ 35,000,000.00 | $ 40,000,000.00 |
|---|---|---|---|---|---|
| Common Stock | $ - | $ - | $ - | $ - | $ 475,363.00 |
| Employee Participation | $ 950,000.00 | $ 1,350,000.00 | $ 1,750,000.00 | $ 2,200,000.00 | $ 3,567,035.00 |
| Series A | $ 547,111.00 | $ 9,965,160.00 | $ 14,459,209.00 | $ 18,904,410.00 | $ 19,134,606.00 |
| Series A Warrants | $ 128,465.00 | $ 234,416.00 | $ 340,366.00 | $ 445,165.00 | $ 450,593.00 |
| Series B | $ 13,450,425.00 | $ 13,450,425.00 | $ 13,450,425.00 | $ 13,450,425.00 | $ 16,160,818.00 |
| Series B Warrants | $ - | $ - | $ - | $ - | $ 211,585.00 |
| | | | | | |
| Series A Proceeds Per Share | $ 2.48 | $ 4.51 | $ 6.54 | $ 8.55 | $ 8.66 |
| Series A Percentage of Purchase Price | 57% | 104% | 151% | 198% | 200% |

33. The figures set out above were memorialized in a PowerPoint slides distributed to the Minority Shareholders in 2011 and 2012. True and correct copies of the relevant slides from the PowerPoint presentations are attached hereto as Exhibit A. The Minority Shareholders were told in 2011 and 2012 that they could expect these preferential liquidations payouts in the event of a sale at the specified prices. On information and belief, Kentrox, Investcorp, Cremona and Radhakrishnan each knew of, approved and ratified these statements and the PowerPoint presentation.

34. As can be seen from the table above and Exhibit A, the Minority Shareholders were told that they would be paid approximately $6.54 per share if the Company were sold for $30 million cash – one-and-a-half times their original investment. The Minority Shareholders relied on these representations and believed that their liquidation preference would be

honored. The Minority Shareholders, therefore, did not investigate further into the status or terms of any potential sale and took no steps to make sure that the Company would comply with its obligation under the Articles of Incorporation to provide the required 20 days notice of the terms of a proposed transaction.

35.     The Minority Shareholders were informed by letter dated March 19, 2013, that the Company was being sold on April 1, 2013, for $30 million. In light of the representations made in 2011 and 2012, the Minority Shareholders were shocked to learn that they would receive less than $.14 (14 cents) per share instead of the $6.54 per share they had been led to expect.

36.      In anticipation of the sale and on the same day that the Merger Agreement was approved, Investcorp forced the conversion of all preferred shares to common stock. As a result of the forced conversion of the preferred shares to common stock, the Company asserted that it was not required to pay any liquidation preference on the Minority Shareholders' shares. As shown by the estimated payout sheet provided to the Minority Shareholders (a true copy of which is attached as Exhibit B), the main beneficiaries of the conversion were the senior employees, who could profitably sell their common shares and exercise their stock options.

37.     As shown by Exhibit A (and the summary table in paragraph 32 above), if the liquidation preference had been honored, there would have been no proceeds available after paying the preferred shareholders to pay anything to the common shareholders. The common shares and stock options held by senior and executive management would have been worthless.

38.     The effect of converting all preferred shares was to transfer several million dollars of the sales proceeds to employees who held common shares and stock options that would otherwise have had no value. In accordance with this scheme, Counterclaimants are

informed and believe that the $30 million purchase price was allocated approximately as follows:

| Investcorp | $23.75 million |
| Other common shareholders (employees, officers and directors) | $2.25 million |
| Employee Stock Options, Senior and Executive Management "Carve out" Participants | $2.96 million |
| Merger Expenses | $1.05 million |
| Former Catapult/Minority Shareholders | $37,192 |

39. As a result of how the merger was structured and carried out, the Minority Shareholders lost 97 percent of the amount they invested in the company. They were the only shareholders to lose money on their overall investment in the Company.

40. Based on information and belief, Investcorp and the other Counterdefendants decided to shift sales proceeds to employees, senior management and executive management for their own benefit. Based on information and belief, Cremona as a director and CEO and Radhakrishnan as a director and representative of Investcorp negotiated and/or approved and ratified this scheme. The Counterdefendants, and each of them, structured this transfer of sales proceeds to employees, senior management and executive management in a way that they knew would disproportionately affect a single class of investor – the Minority Shareholders.

41. Contrary to their rights under the Articles of Incorporation, the Minority Shareholders were presented with this plan as a *fait accompli* after it had been approved by the Kentrox Board of Directors, Investcorp and Westell and less than two weeks before the merger was to occur. Counterclaimants are informed and believe that the timing of the notice

was intended to eliminate any opportunity to discover and investigate the scheme before the transaction closed.

42. Had the Company and Investcorp complied with their notice obligations and/or had they been candid at an earlier date with the Minority Shareholders about their plans regarding the sale of Kentrox, the Minority Shareholders would have taken action to protect their investment. These actions would have included investigating reasonable options to accomplish the objectives of Counterdefendants without a disproportionate impact on the Minority Shareholders.

43. The former Catapult group included Fortune 50 executives, investors, business advisors and entrepreneurs who could have assisted Kentrox's Board in planning for the sale of the Company. Instead, Counterdefendants lulled the Minority Shareholders into believing that their investment was secure and protected.

## FIRST CLAIM FOR RELIEF

## BREACH OF FIDUCIARY DUTY

(*Against Counterdefendants Investcorp 1, Investcorp 2,*

*Investcorp 3, Radhakrishnan, Cremona and Does 1-25*)

44. Counterclaimants incorporate by reference the allegations of all other paragraphs in the Complaint.

45. As majority shareholders of a closely held corporation, Investcorp owed the Minority Shareholders fiduciary duties of loyalty, good faith, fair dealing and full disclosure. As members of the board of directors of Kentrox, Radhakrishnan and Cremona also owed fiduciary duties to the Minority Shareholders.

46. In planning, structuring and carrying out the merger with Westell, Investcorp, Radhakrishnan and Cremona used their control over Kentrox to their own advantage and to exclude the Minority Shareholders from the benefits of participating in the corporation.

47. As a senior executive and holder of common stock and stock options, Cremona used his position and influence to structure the merger to enrich himself by increasing the value of the common stock and stock options at the expense of the Minority Shareholders. Cremona also negotiated a lucrative position for himself in the acquiring company, Westell.

48. As a director and representative of Investcorp, Radhakrishnan colluded with Cremona to provide millions of dollars in financial benefits to Cremona and other senior and executive management at the expense of the Minority Shareholders. Radhakrishnan participated in this conduct to further his own separate and selfish interests and the interests of Investcorp.

49. The conduct set out above was unrelated to the Board's duty to obtain the best price for the Company and served no other legitimate business purpose.

50. As a direct and proximate result of this conduct, the Minority Shareholders have suffered actual damages.

51. These acts by Counterdefendants were carried out in bad faith and were malicious, oppressive, and fraudulent such that an award of punitive damages is warranted.

SECOND CLAIM FOR RELIEF

BREACH OF CONTRACT

(*Against Kentrox*)

52. Counterclaimants incorporate by reference the allegations of all other paragraphs in the Complaint.

53. The Third Amended and Restated Articles of Incorporation ("Articles of Incorporation," attached to the Kentrox Complaint in this action) set out the mutual duties and obligations of Kentrox and its shareholders, and such duties and obligations are enforceable as a contract.

54. Counterclaimants fully performed their duties and obligations under the Articles of Incorporation, except for such duties as were excused.

55. Pursuant to the Articles of Incorporation, in the event of "any liquidation, dissolution or winding up of the Corporation," Series B Preferred shareholders had the first priority for distribution of the Company's assets and sales proceeds.

56. After the payment of amounts due the Series B Preferred shareholders, the holders of Series A Preferred shares (including the Minority Shareholders) were entitled to a preferential payment of the Company's remaining assets and sales proceeds in an "amount per share equal to two (2) times the Series A Original issue Price."

57. As defined in the Articles of Incorporation, "a liquidation, dissolution or winding up of the Corporation shall be deemed to occur (A) if the Corporation shall sell, convey, or otherwise dispose of all or substantially all of its assets or (B) upon the acquisition of the Corporation by another entity . . . by means of merger or other form of reorganization."

58. The sale and merger of the Company with Westell constituted a liquidation and triggered the Minority Shareholders' rights to a preferential payout of up to twice the amount paid for the shares.

59. Further, Investcorp waived its rights to compel an automatic conversion of the preferred shares to common stock and is estopped by its representations in 2011 and 2012 (and earlier) that the rights of preferred shareholders would be honored in the event of a sale or merger.

60. The Articles of Incorporation further provide in Section 2(e)(iii) that the Corporation:

> . . . shall give each holder of record of Preferred Stock written notice of such impending [liquidation] transaction not later than twenty (20) days prior to the shareholders' meeting called to approve such transaction, or twenty (20) days prior to the closing of such transaction, whichever is earlier, and shall also notify such holders in writing of the final approval of such transaction. The first of such notices shall describe the material terms and conditions of the impending transaction and the provisions of this Section 2, and the Corporation shall thereafter give such holders prompt notice of any material changes to the terms and conditions of the

pending transaction. The transaction shall in no event take place sooner than twenty (20) days after the Corporation has given the first notice provided for herein or sooner than twenty (20) days after the Corporation has given notice of any material changes provided for herein; . . .

61. The Articles of Incorporation further provide in Section 2(e)(iv):

**Effect of Noncompliance.** In the event the requirements of this Section 2(e) are not complied with, the Corporation shall forthwith either cause the closing of the transaction to be postponed until such requirements have been complied with, or cancel such transaction, in which even the rights, preferences and privileges of the holders of Preferred Stock shall revert to and be the same as such rights, preferences and privileges existing immediately prior to the date of the first notice referred to in Section 2(d)(iii) hereof.

62. The Company mailed notice of the merger agreement on March 19, 2013, after the agreement had already been approved and signed by all parties. Before the merger closed, several Minority Shareholders contacted the officers and directors of Kentrox to request that the transaction be cancelled. On April 1, 2013 – 13 days after the notice was mailed – the transaction closed.

63. Kentrox breached its obligations under the Articles of Incorporation by:

   a. failing to make the preferential payout to the Minority Shareholders;

   b. failing to provide notice to the Minority Shareholders of the material terms and conditions of the merger transaction before March 15, 2013, the date of its final approval;

   c. failing to provide notice to the Minority Shareholders of the material terms and conditions of the merger transaction at least 20 days before the transaction closed.

64. As a result of the failure to provide mandatory notices pursuant to the Articles of Incorporation, the merger transaction is void and/or voidable and is subject to rescission at the election of the Minority Shareholders.

65. As a direct and proximate result of the breaches set out above, the Minority Shareholders have suffered actual damages.

## THIRD CLAIM FOR RELIEF
## BREACH OF THE IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

(*Against Kentrox*)

66. Counterclaimants incorporate by reference the allegations of all other paragraphs in the Complaint.

67. Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. In every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

68. In planning, structuring and carrying out the merger with Westell, Kentrox deprived the Minority Shareholders of the benefits of participating in the corporation. Kentrox structured the merger with Westell to provide millions of dollars in financial benefits to senior and executive management at the expense of the Minority Shareholders.

69. The conduct set out above was unrelated to the Board's duty to obtain the best price for the Company and served no other legitimate business purpose.

70. As a direct and proximate result of this conduct, the Minority Shareholders have suffered actual damages.

71. These acts by Counterdefendants were carried out in bad faith and were malicious, oppressive, and fraudulent such that an award of punitive damages is warranted.

# FOURTH CLAIM FOR RELIEF
# INTENTIONAL INTERFERENCE WITH
# CONTRACTUAL OR ECONOMIC RELATIONS

(*Against Counterdefendants Investcorp 1, Investcorp 2,*

*Investcorp 3, Radhakrishnan, Cremona, Westell, and Does 1-25*)

72.     Counterclaimants incorporate by reference the allegations of all other paragraphs in the Complaint.

73.     The Minority Shareholders enjoyed rights and protections under the Kentrox Articles of Incorporation, and these rights are contractual in nature. These rights included the right to a preferential liquidation payment up to twice the original issue price of the Preferred Series A Kentrox shares, the right to notice of the material terms of a merger before the merger agreement was approved, and the right to notice of the material terms of a merger at least 20 days before the transaction closes.

74.     Investcorp, Radhakrishnan, Cremona and Westell knew of the rights the Minority Shareholders enjoyed under the Articles of Incorporation.

75.     Investcorp, Radhakrishnan, Cremona and Westell intentionally interfered with the Minority Shareholders' enjoyment of their contractual rights and expectations of economic benefits through their joint scheme to structure the merger plan to deprive the Minority Shareholders of their rights and benefits.

76.     Investcorp, Radhakrishnan, Cremona and Westell used improper means and/or acted for improper motives to accomplish this interference. These improper means included: forcing conversion of the preferred shares to common stock after making representations that the Minority Shareholders' liquidation preference would be honored; lulling the Minority Shareholders into complacency with false or misleading statements and/or promises made with no intention of performing on these promises; and denying the Minority Shareholders

proper notice of the transaction that would have given the Minority Shareholders sufficient time to protect their rights and interests.

77.    Investcorp's, Radhakrishnan's and Cremona's motives were not to benefit the corporation's interests, but were instead self-serving and/or malicious.

78.    As a direct and proximate result of the interference, the Minority Shareholders have suffered actual damages.

79.    These acts by Counterdefendants were carried out in bad faith and were malicious, oppressive, and fraudulent such that an award of punitive damages is warranted.

## FIFTH CLAIM FOR RELIEF

## DECLARATORY RELIEF

(*Against Kentrox, Investcorp 1, Investcorp 2, and Investcorp 3*)

80.    Counterclaimants incorporate by reference the allegations of all other paragraphs in the Complaint.

81.    An actual controversy has arisen and now exists between Counterclaimants and Kentrox and Investcorp concerning their respective rights and duties. Counterclaimants desire a judicial determination of the parties' rights and duties under the Oregon Dissenters' Rights Statute, Third Amended and Restated Articles of Incorporation, and other agreements between the parties.

82.    A judicial declaration is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights and duties.

83.    Counterclaimants therefore request judicial declarations as follows:

   a. As a result of their representations and conduct, Investcorp waived any right under the Third Amended and Restated Articles of Incorporation to force conversion of the preferred shares to common stock;

   b. Under the Third Amended and Restated Articles of Incorporation, the action to force a conversion of the preferred shares in connection with a

    merger was a "liquidation event" that entitled the Minority Shareholders to the preferential liquidation payout of up to two times the original issue price of the Preferred Series A shares.

c. As a result of the failure to provide the notice(s) required by the Third Amended and Restated Articles of Incorporation, the merger transaction is void or voidable and subject to rescission at the option of the Minority Shareholders;

d. The Minority Shareholders are not barred from exercising their rights under ORS 60.551 *et seq*. because the contractual prohibition on exercising dissenters' rights in the Right of First Refusal and Co-Sale Agreement only applies to a "Liquidation Event" if each shareholder has been "offered the consideration payable" under the Amended and Restated Articles of Incorporation. This provision does not apply because the Minority Shareholders were not offered their liquidation preference as stated in the Articles of Incorporation.

e. The Minority Shareholders are not barred from exercising their rights under ORS 60.551 *et seq*. because the contractual prohibition on exercising dissenters' rights in the Right of First Refusal and Co-Sale Agreement only applies to a transaction in which the "aggregate proceeds" are at least $30 million. The parties understood and agreed that "aggregate proceeds" meant the amount paid to shareholders exclusive of payments to management "carve out" participants and escrowed amounts not included in payments to shareholders. This provision does not apply because the "aggregate proceeds" paid to shareholders (exclusive of carve out plan payments and escrowed amounts) did not exceed $30 million.

  f. Kentrox and Investcorp have waived objections to and are estopped from arguing that the Minority Shareholders cannot exercise their rights under ORS 60.551 *et seq.* because Kentrox's letter to shareholders dated March 19, 2013 advised the Minority Shareholders that they could pursue dissenters' rights under the statute.

  g. Kentrox failed to comply with the Oregon Dissenters' Rights statute, ORS 60.567(d) ("Dissenters' notice") in that the deadline it set for receipt of a payment demand was fewer than "30 days . . . after the date" the Notice of dissenters' rights was "delivered." Instead, Kentrox set the deadline for receipt of a payment demand 30 days after March 19, 2013 (the date notice was apparently mailed). For this reason, Kentrox may not enforce compliance with the deadline stated in its Notice or exclude shareholders from exercising dissenters' rights based on any purported failure to comply with this deadline.

## DEMAND FOR JURY TRIAL

84. Counterclaimants demand a trial by jury.

## PRAYER FOR RELIEF

85. Counterclaimants respectfully request that judgment be entered as follows:

  a. For actual damages in an amount to be specified and proven;

  b. For an order rescinding the merger transaction between Kentrox and Westell and restoring the preferred shareholders to their rights, preferences and privileges as of March 14, 2013;

  c. For punitive and exemplary damages in an amount sufficient to punish and deter the conduct of Counterdefendants;

  d. For declaratory relief and judgment as specified above;

  e. For reasonable attorney's fees and costs pursuant to ORS 60.577, 60.594 and all other applicable rules and statutes; and

  f. For such further relief as the Court may deem just and proper.

DATED:  November 6, 2013

           NEWDORF LEGAL

          By:/s/ David B. Newdorf
           DAVID B. NEWDORF
           Attorney for Defendants/Counterclaimants
           JANE BERNSTEIN, MOHAMMAD
           MORTAZAVI, LAWRENCE BENNETT,
           ROBERT A. ELLIS, JAWAD KAMEL,
           ROBERT FERRI, MICHAEL MANSOURI, and
           HOSSEIN ESLAMBOLCHI.

20 – DEFENDANTS' COUNTERCLAIM

NEWDORF LEGAL
220 Montgomery St. #1850
San Francisco, CA 94104
(415) 357-1234