UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


KENTROX, INC.,

        Plaintiff,

   v.

JANE BERNSTEIN; MOHAMMAD
MORTAZAVI; LAWRENCE BENNETT,
individually and on behalf of the LAWRENCE
BENNETT REVOCABLE TRUST; ROBERT
A. ELLIS, individually and on behalf of the
ROBERT A. ELLIS REVOCABLE TRUST;
JAWAD KAMEL; ROBERT FERRI;
MICHAEL MANSOURI; and HOSSEIN
ESLAMBOLCHI,

        Defendants.

_____

JANE BERNSTEIN; MOHAMMAD
MORTAZAVI VI; LAWRENCE BENNETT,
individually and on behalf of the LAWRENCE
BENNETT REVOCABLE TRUST; ROBERT
A. ELLIS, individually and on behalf of the
ROBERT A. ELLIS REVOCABLE TRUST;
JAWAD KAMEL; ROBERT FERRI;
MICHAEL MANSOURI; and HOSSEIN
ESLAMBOLCHI,

        Counterclaimants,

Case No. 3:13-CV-01492 -ST

FINDINGS AND
RECOMMENDATION

1 – FINDINGS AND RECOMMENDATION

v.

KENTROX, INC., INVESTCORP
TECHNOLOGY VENTURES II, L.P., a
Cayman Islands limited partnership;
INVESTCORP TECHNOLOGY VENTURES
II, L.P., a Delaware limited partnership; ITV II
(II), L.P., a Cayman Islands limited partnership;
WESTELL, INC., a Delaware corporation;
ANAND RADHAKRISHNAN; RICHARD
CREMONA; and DOES 1 through 25,
inclusive,

                      Counterdefendants.

_____

STEWART, Magistrate Judge:

## **INTRODUCTION**

This case involves a challenge to a conversion of preferred stock to common stock immediately before a corporate merger, which caused the minority shareholders to lose most of their investment.

On April 1, 2013, plaintiff, Kentrox, Inc. ("Kentrox"), an Oregon corporation, merged with, and is now a division of, Westell Technologies, Inc. ("Westell"). Following the merger, several former minority shareholders of Kentrox Series A Participating Preferred stock initiated the dissenting shareholders process provided in the Oregon Dissenters' Rights statute, ORS 60.551 - .594, including sending letters providing estimates of the fair value of their shares, pursuant to ORS 60.587. Those letters triggered a 60-day period within which Kentrox was required to pay the amount demanded or commence a civil action pursuant to ORS 60.591.

On August 23, 2013, Kentrox filed this action against several of those dissenting shareholders ("defendants")[1] who are citizens of California, Florida, and Turkey (Complaint, ¶¶ 2-7), and 10 unnamed "Doe" defendants (*id*, ¶ 8), seeking:  (1) declaratory relief that defendants cannot challenge conversion of their stock under Oregon's Dissenters' Rights Statute, ORS 60.551 - .594; (2) alternatively, a determination, pursuant to ORS 60.577, that the fair value of each defendant's Kentrox stock is equal to the amount Kentrox paid defendants; and (3) damages due to defendants' breach of contract.

After the named defendants[2] filed an Answer (docket #12), they and two additional individuals (Michael Mansouri ("Mansouri") and Hossein Eslambolchi ("Eslambolchi"))[3] filed a Counterclaim for Damages, Rescission, and Declaratory Relief (docket #13) ("Counterclaim"). The Counterclaim alleged claims against both Kentrox and Westell, as well as against affiliated funds which had been the majority shareholder of Kentrox preferred stock collectively known as "Investcorp,"[4] two other individuals (Anand Radhakrishnan ("Radhakrishnan") and Richard Cremona ("Cremona")), and "Does 1 through 25, inclusive."

Radhakrishnan is a managing director and principal of the Investcorp Group and Investcorp Technology Partners and, until the merger, was a member of the Board of Directors of Kentrox.  Radhakrishnan was also a manager of Investcorp 1, Investcorp 2, and Investcorp 3. Until the merger, Cremona was the President and CEO of Kentrox and a member of its Board of

---

[1] Those shareholders included Jane Bernstein ("Bernstein"), Mohammad Mortazavi ("Mortazavi"), Lawrence Bennett (Bennett"), individually and on behalf of the Lawrence Bennett Revocable Trust ("Bennett Trust"), Robert A. Ellis ("Ellis"), individually and on behalf of the Robert A. Ellis Revocable Trust ("Ellis Trust"), Jawad Kamel ("Kamel"), and Robert Ferri ("Ferri").
[2]  The "named defendants" included all individuals in both their individual and fiduciary capacities, but not the "Doe" defendants.
[3] Collectively, these individuals are variously referred to as "Counterclaimants," "Minority Shareholders," or "Catapult Investors," having received their stock holdings in Kentrox by means of the dissolution of the original investor, Catapult Technology Fund 2005, LLC.
[4] "Investcorp" includes Investcorp Technology Ventures II, L.P., a Cayman Islands limited partnership ("Investcorp 1"), Investcorp Technology Ventures II, L.P., a Delaware limited partnership ("Investcorp 2"), and ITVII (II), L.P., a Cayman Islands limited partnership ("Investcorp 3").

Directors.  Since the merger, Cremona has been the Senior Vice President and Chief Operating Officer of Westell.

On December 23, 2013, Kentrox and the other Counterdefendants filed a Motion for Partial Dismissal and for Partial Judgment on the Pleadings (docket #18), seeking judgment on the pleadings on the declaratory relief claim and to dismiss all counterclaims with prejudice insofar as they relate to the conversion of stock.  Just before the hearing on the motion, Kentrox filed an Amended Complaint (docket #24), deleting the "Doe" defendants and adding as defendants the remaining individual Counterclaimants who are citizens of Maryland (Mansouri) and California (Eslambolchi).

On April 22, 2014, defendants ("Minority Shareholders") filed their Answer to the Amended Complaint and Affirmative Defenses (docket #28), followed by a First Amended Counterclaim for Damages, Rescission, and Declaratory Relief (docket #33) ("Amended Counterclaim").

For the reasons that follow, the pending motion should be denied.

## **FINDINGS**

### I. **Jurisdiction**

As originally pled with the naming of "Doe" defendants, this court lacked subject matter jurisdiction based on diversity of citizenship under 28 USC § 1332.  Although Kentrox is a citizen of a different state than the defendants named in the original Complaint, that pleading also identified "John Does 1-10" as unnamed defendants.  Complaint, ¶ 8.  In the Ninth Circuit, the inclusion of "Doe" defendants destroys the complete diversity requirement.  *Garter-Bare Co. v. Munsingwear, Inc.*, 650 F2d 975, 981 (9th Cir 1980), citing *Fifty Assocs. v. Prudential Ins. Co. of Am.*, 446 F2d 1187, 1191 (1970) ("In the federal courts 'John Doe' casts no magical spell on a

complaint otherwise lacking in diversity jurisdiction."); *Molnar v. Nat'l Broad. Co.*, 231 F2d 684, 686-87 (9th Cir 1956). However, the Amended Complaint, filed just before the hearing on the pending motion, deleted the "Doe" defendants.

Kentrox is an Oregon corporation with its principal place of business in Ohio, and is now a division of Westell, a Delaware corporation with its principal place of business in Illinois. Defendants include citizens of California, Florida, Maryland, and Turkey. The amount in controversy exceeds $75,000.00, exclusive of interest and costs. Accordingly, this court has jurisdiction over this case pursuant to 28 USC § 1332(a).[5]

The Amended Counterclaim alleges that the named Counterclaimants are citizens of California, Florida, Maryland, and Turkey[6] (Amended Counterclaim, ¶¶ 7-14) and identifies each of the named corporate and individual Counterdefendants as citizens of Oregon, Ohio, Delaware, Illinois, the Cayman Islands, New York (*id*, ¶¶ 15-21). It also names "Does 1 through 25, inclusive" as Counterdefendants.

The Amended Counterclaim alleges counterclaims for: (1) breach of fiduciary duty; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) intentional interference with contractual or economic relations; and (5) declaratory relief. These counterclaims are premised upon alleged misrepresentations by the Counterdefendants regarding the payout to Minority Shareholders from the merger and upon the structure of the merger by the Counterdefendants to allegedly benefit themselves at the direct and disproportionate expense of the Minority Shareholders. These counterclaims are clearly

---

[5] Kentrox alleges, and defendants admit, that Kamel is a "resident and citizen of Turkey." Amended Complaint, ¶ 6; Answer to Amended Complaint, ¶ 6. Diversity jurisdiction would be lacking if Kamel were a lawful permanent resident of the United States and domiciled in the same state of which the corporate plaintiff is a citizen. 28 USC § 1332(a)(2). Absent any information to the contrary, this court assumes that Kamel is not a lawful permanent resident of the United States domiciled in any such state.
[6] "The Foreign Diversity Clause provides that the judicial power extends 'to Controversies . . . between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.'" *In re Estate of Ferdinand E. Marcos Human Rights Litig.*, 978 F2d 493, 501 n19 (9th Cir 1992), quoting US Const. art. III, § 2, cl. 1.

compulsory in nature and, as such, present no obstacle to federal jurisdiction despite the presence of "Doe" Counterdefendants whose citizenship is as yet uncertain. *See Union Paving Co. v. Downer Corp.*, 276 F2d 468, 470-71 (9th Cir 1960) ("[W]hen a counterclaim is closely connected to the main action and thus may be pleaded under [FRCP] 13(a), diversity jurisdiction is not destroyed by a lack of diversity between the counterclaimant and any third party against whom he may move.").

Because the Amended Complaint deleted the "Doe" parties, this court has diversity jurisdiction over Kentrox's claims pursuant to 28 USC § 1332 and also has supplemental jurisdiction over the compulsory counterclaims alleged in the Amended Counterclaim pursuant to 28 USC § 1367 despite the "Doe" Counterdefendants.

## II. Propriety of the Conversion of Stock

### A. Scope of Motion

The Counterdefendants seek dismissal of all counterclaims "insofar as they relate to conversion of stock." The Counterdefendants do not seek dismissal of all of five counterclaims *in toto*, but instead seek only to bar the Minority Shareholders from relying on what the Counterdefendants characterize as their "first theory of liability," namely that Investcorp wrongfully converted the Minority Shareholders' Series A Participating Preferred Stock into common stock.

Additionally, Kentrox seeks judgment on the pleadings as to its First Claim for Relief in the Amended Complaint which seeks declaratory relief that the Minority Shareholders cannot challenge conversion of their stock under Oregon's Dissenters' Rights Statute because: (1) the conversion of preferred stock to common stock pursuant to governing corporate instruments is not an event that triggers a right of shareholders to dissent (Amended Complaint, ¶¶ 33-34); and

(2) defendants Mortazavi, Kamel, Mansouri, and Eslambolchi are not entitled to avail themselves

of the dissenters' rights statute because they did not timely transmit a dissenters' notice and

demand for payment as required by ORS 60.567(2) (*id*, ¶ 37).  Additionally, Kentrox alleges that

defendants' exclusive and sole remedy under Oregon's Dissenters' Rights Statute is an appraisal

of the fair value of Kentrox and the outstanding common stock at the time of the merger (*id*,

¶ 35).

### A. <u>Legal Standard</u>

In order to state a claim for relief, a pleading must contain "a short and plain statement of

the claim showing that the pleader is entitled to relief."  FRCP 8(a)(2).  To meet this standard

and "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is *plausible* on its face.'"  *Ashcroft v. Iqbal*, 556 US 662, 678

(2009) (emphasis added), quoting *Bell Atl. Corp. v. Twombly*, 550 US 544, 547 (2007).  A

plausible claim "does not require 'detailed factual allegations,'" but does demand "more than an

unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*  Labels and conclusions or a

formulaic recitation of the elements of a claim will not do.  *Twombly*, 550 US at 555.

A party may move for judgment on the pleadings at any time after the pleadings are

closed, but early enough not to delay trial.  FRCP 12(c).  For purposes of either a motion under

FRCP 12(c) or FRCP 12(b)(6), the court must accept the nonmoving party's allegations as true

and view all inferences in a light most favorable to the nonmoving party.  *Sateriale v. R.J.*

*Reynolds Tobacco Co.*, 697 F3d 777, 783 (9th Cir 2012) (motion to dismiss); *Chavez v. United*

*States*, 683 F3d 1102, 1108 (9th Cir 2012) (motion for judgment on the pleadings).  "Analysis

under [FRCP] 12(c) is 'substantially identical' to analysis under [FRCP] 12(b)(6) because, under

both rules, 'a court must determine whether the facts alleged in the complaint, taken as true,

entitle the plaintiff to a legal remedy.'" *Chavez*, 683 F3d at 1108, quoting *Brooks v. Dunlop Mfg., Inc.*, No. C 10-04341 CRB, 2011 WL 6140912, at *3 (ND Cal Dec 9, 2011). As with FRCP 12(b)(6) motions, matters submitted outside the pleadings, which are not excluded by the court, convert a motion for judgment on the pleadings to a summary judgment motion.

### B. Facts Admitted and Alleged in the Pleadings

For purposes of this motion, this court accepts as true those allegations of the Amended Complaint that are admitted, accepts as true the allegations of the Amended Counterclaim, and construes all inferences in favor of the Minority Shareholders.

### 1. Kentrox's Charter

Kentrox is a business venture incorporated in 2004 that provided businesses with intelligent site management solutions, including monitoring, management, and control of remote sites. Under its Articles of Incorporation,[7] Kentrox was authorized to issue both Common Stock and Preferred Stock, including Series A Participating Preferred Stock and Series B Participating Preferred Stock. Art. IV, §§ A & D. The Articles of Incorporation provide for automatic conversion of Participating Preferred Stock into shares of Common Stock upon "the date specified by written consent or agreement of the holders of at least a majority of the then outstanding shares of Series A Participating Preferred and Series B Participating Preferred, voting together as a single class, without the requirement of any action as [sic] the part of the holder thereof." Art. IV, § 3(b).

///

///

///

---

[7] All references to the Articles of Incorporation are to the Third Amended and Restated Articles of Incorporation in effect at the time of the merger. Complaint, Ex. A.

## 2. __History of Stock Holdings__

On or about December 19, 2005, Kentrox had an initial closing of its Series A Participating Preferred Stock financing. The lead investors were three affiliated funds collectively known as "Investcorp."[8] Radhakrishnan was Investcorp's manager.

In this initial closing of the Series A Participating Preferred Stock, Catapult Technology Fund 2005, LLC ("Catapult"), acquired a minority stake in these shares. The Minority Shareholders were members of Catapult. In connection with the Series A Participating Preferred Stock financing, Kentrox and the investors in the financing entered into a Right of First Refusal and Co-Sale Agreement ("Co-Sale Agreement"). Complaint, Ex. B. The Co-Sale Agreement places certain restrictions on the exercise of dissenters' rights or rights of appraisal with respect to a "Required Sale." *Id*, §§ 2 & 2.3. The Minority Shareholders deny that the Co-Sale Agreement prevents the exercise of dissenters' rights in this action.

At various times between 2005 and 2009, Kentrox issued and Catapult acquired additional shares of Series A Participating Preferred Stock. Despite purchasing these additional shares, Catapult continued to hold a minority of Kentrox's outstanding Series A Participating Preferred Stock. In late November 2009, Kentrox transferred the Series A Participating Preferred Stock held by Catapult to the Minority Shareholders. Each defendant executed an Adoption Agreement (Complaint, Ex. C) agreeing, among other things, to be bound by the Co-Sale Agreement. The Minority Shareholders deny that the Adoption Agreement prevents the exercise of dissenters' rights in this action.

After Catapult's 2009 distribution, none of the Minority Shareholders acquired additional Kentrox stock, except to the extent they were issued additional shares of Series A Participating Preferred Stock in May 2007. Between 2005 and 2013, the Catapult Investors remained minority

---

[8] *See supra* note 4.

shareholders of Series A Participating Preferred Stock, and the Investcorp entities owned a

majority of the Series A Preferred Stock, Series B Preferred Stock, and common stock.

### 3.  **Preferred Stock Preference Payment**

As holders of preferred stock, Investcorp and Catapult would receive preference in

payment upon liquidation of Kentrox.  Specifically, the Articles of Incorporation contain the

following provisions relating to Liquidation applied to the two types of Preferred stock:

> (a)  **Series B Preference**.  In the event of any liquidation, dissolution
> or winding up of the Corporation, either voluntary or involuntary, the
> holders of Series B Participating Preferred shall be entitled to receive,
> prior and in preference to any distribution of any of the assets of the
> Corporation to the holders of Series A Participating Preferred and the
> holders of Common Stock by reason of their ownership thereof, an
> amount per share equal to one (1) times the Series B Original Issue
> Price . . . .
>
> (b)  **Series A Preference**.  If assets or surplus funds remain upon
> completion of the distribution required by Section 2(a) above, the
> holders of Series A Participating Preferred shall be entitled to receive,
> prior and in preference to any distribution of the assets of the
> Corporation to the holders of Common Stock by reason of their
> ownership thereof, an amount per share equal to two (2) times the
> Series A Original Issue Price . . . .

Art. IV, § D(2).

Thus, upon a "liquidation, dissolution or winding up" of Kentrox, holders of Series A

Participating Preferred Stock were entitled to receive: (1) preference in the distribution of assets

over holders of common stock, and (2) "an amount per share equal to two (2) times the Series A

Original Issue Price," which was $4.3185 per share.

### 4.  **The Merger**

On April 1, 2013, Kentrox was sold to Westell in a merger.  Prior to the merger, all of

Kentrox's preferred stock was converted to common stock by Investcorp.  Kentrox sent a notice

of dissenters' rights to at least some of its shareholders pursuant to ORS Chapter 60, and at least

some of those shareholders timely sent a demand for payment pursuant to ORS 60.571.[9]  In

response, Kentrox filed this action.

### 5.  Allegations of the Amended Counterclaim

The Minority Shareholders allege that the Counterdefendants led them to believe that the

right of conversion to common stock would not be exercised in connection with a sale.

Amended Counterclaim, ¶ 31.

In 2011 and 2012, Kentrox presented sales scenarios to the Minority Shareholders (orally

and in writing) to show how much they would receive, depending on the sales price.  These

projections were calculated based on the liquidation preference due to shareholders under

Kentrox's Articles of Incorporation.  Kentrox, Investcorp, and the individual Counterdefendants

each knew of, approved, and ratified these statements.  *Id*, ¶¶ 32-33.  The projected proceeds to

the various classes of shareholders and participants, at various sales prices were represented as

follows:

| Total Cash Sales Price | $ 20,000,000.00 | $ 25,000,000.00 | $ 30,000,000.00 | $ 35,000,000.00 | $ 40,000,000.00 |
|---|---|---|---|---|---|
| Common Stock | $            - | $            - | $            - | $            - | $   475,363.00 |
| Employee Participation | $    950,000.00 | $  1,350,000.00 | $  1,750,000.00 | $  2,200,000.00 | $  3,567,035.00 |
| Series A | $    547,111.00 | $  9,965,160.00 | $ 14,459,209.00 | $ 18,904,410.00 | $ 19,134,606.00 |
| Series A Warrants | $    128,465.00 | $    234,416.00 | $    340,366.00 | $    445,165.00 | $   450,593.00 |
| Series B | $ 13,450,425.00 | $ 13,450,425.00 | $ 13,450,425.00 | $ 13,450,425.00 | $ 16,160,818.00 |
| Series B Warrants | $            - | $            - | $            - | $            - | $   211,585.00 |
|  |  |  |  |  |  |
| Series A Proceeds Per Share | $          2.48 | $          4.51 | $          6.54 | $          8.55 | $         8.66 |
| Series A Percentage of Purchase Price | 57% | 104% | 151% | 198% | 200% |

As shown by this table, the Minority Shareholders allege they were told that they would

be paid approximately $6.54 per share if Kentrox was sold for $30 million cash – one-and-a-half

times their original investment.  *Id*, ¶ 34.  The Minority Shareholders relied on these

---

[9]  Kentrox alleges that it sent all shareholders a notice of dissenters' rights as required by ORS 60.561(2) and 60.567 and that only the demands for payment by certain shareholders were timely.  Amended Complaint, ¶ 28.  Defendants have not admitted those detailed allegations and the details of the notices and the timeliness of the demands for payment are not relevant to the present motion.

representations and believed that their liquidation preference would be honored. *Id.* Therefore, they did not investigate further into the status or terms of any potential sale and took no steps to make sure that Kentrox would comply with its obligation under the Articles of Incorporation to provide the required 20-day notice of the terms of a proposed transaction. *Id*.

Had the liquidation preference been honored, no proceeds would have been available to the holders of common stock after paying the preferred shareholders. *Id*, ¶ 37. In that scenario, the common shares and stock options held by senior and executive management would have been worthless. *Id.*

The Minority Shareholders were informed by a letter dated March 19, 2013, that Kentrox was being sold on April 1, 2013, for $30 million. *Id*, ¶ 35. They were further informed that as part of the merger transaction, and on the same day that the Merger Agreement was approved, Investcorp had forced the conversion of all preferred shares to common stock. As a result of that forced conversion, Kentrox asserted it was not required to pay any liquidation preference to the Minority Shareholders. *Id*, ¶ 36. The Minority Shareholders were shocked to learn that they would receive less than $0.14 (14 cents) per share instead of the $6.54 per share they had been led to expect. *Id*, ¶ 35. As a result, 97% of their original investment was wiped out. *Id*, ¶ 39.

As shown by the estimated payout sheet provided to the Minority Shareholders (Amended Counterclaim, Ex. B), the main beneficiaries of the conversion were the senior employees who could profitably sell their common shares and exercise their stock options. *Id*, ¶ 36. The effect of converting all preferred shares was to transfer several million dollars of the sales proceeds to employees who held common shares and stock options that would otherwise have had no value. *Id*, ¶ 38. The Minority Shareholders are informed and believe that the $30 million purchase price was allocated approximately as follows (*id*):

| Investcorp | $23.75 million |
| Other common shareholders (employees, officers and directors) | $2.25 million |
| Employee Stock Options, Senior and Executive Management "Carve out" Participants | $2.96 million |
| Merger Expenses | $1.05 million |
| Minority Shareholders | $37,192 |

Kentrox, Investcorp and the other Counterdefendants shifted sales proceeds to employees, senior management and executive management for their own benefit. *Id*, ¶ 40. Cremona, CEO of Kentrox and a member of the Board of Directors, and Radhakrishnan, a director of Kentrox and a principal of Investcorp, negotiated, approved and ratified this scheme. *Id.* The Counterdefendants structured this transfer of sales proceeds to employees, senior management and executive management in a way that they knew would disproportionately affect a single class of investor, namely the Minority Shareholders. *Id*.

The Articles of Incorporation provide that Kentrox:

> shall give each holder of record of Preferred Stock written notice of such impending [liquidation] transaction not later than twenty (20) days prior to the shareholders' meeting called to approve such transaction, or twenty (20) days prior to the closing of such transaction, whichever is earlier, and shall also notify such holders in writing of the final approval of such transaction. The first of such notices shall describe the material terms and conditions of the impending transaction and the provisions of this Section 2, and the Corporation shall thereafter give such holders prompt notice of any material changes to the terms and conditions of the pending transaction. The transaction shall in no event take place sooner than twenty (20) days after the Corporation has given the first notice provided for herein or sooner than twenty (20) days after the Corporation has given notice of any material changes provided for herein; . . . .

Art. IV, § D(2)(e)(iii).

In the event of noncompliance with this notice provision, it further provides that Kentrox:

> shall forthwith either cause the closing of the transaction to be postponed until such requirements have been complied with, or cancel such transaction, in which event the rights, preferences and privileges of the holders of Preferred Stock shall revert to and be the same as such rights, preferences and privileges existing immediately prior to the date of the first notice referred to in Section 2(d)(iii) hereof.

*Id* at § D(2)(e)(iv):

Contrary to their notice rights, the Minority Shareholders were presented with this plan as a *fait accompli* after it had been approved by the Kentrox Board of Directors, Investcorp and Westell, and less than two weeks before the merger was to occur. Amended Counterclaim, ¶ 41. The timing of the notice was intended to eliminate any opportunity for the Minority Shareholders to discover and investigate the scheme before the transaction closed. *Id.*

In planning, structuring and carrying out the merger, Investcorp, Radhakrishnan and Cremona used their control over Kentrox to their own advantage and to exclude the Minority Shareholders from the benefits of participating in the corporation. *Id*, ¶ 45. As CEO, board member and a holder of common stock and stock options, Cremona used his position and influence to structure the merger to enrich himself by increasing the value of the common stock and stock options at the expense of the Minority Shareholders. *Id*, ¶ 46. Cremona also negotiated a lucrative position for himself in the acquiring company, Westell. *Id.*

As a director and representative of Investcorp, Radhakrishnan colluded with Cremona to provide this substantial financial benefit to Cremona and other senior and executive management at the expense of the Minority Shareholders. *Id*, ¶ 47. This scheme was unrelated to the Board's duty to obtain the best purchase price and served no legitimate business purpose. *Id*, ¶ 48.

The Minority Shareholders allege that Kentrox breached its obligations under the Articles of Incorporation by: (a) failing to make the preferential payout to the Minority Shareholders; (b) failing to provide notice to the Minority Shareholders of the material terms and conditions of the merger transaction before March 15, 2013, the date of its final approval; and (c) failing to provide notice to the Minority Shareholders of the material terms and conditions of the merger transaction at least 20 days before the transaction closed. *Id*, ¶ 63.

C. **Analysis**

1. **Issues Raised**

The parties do not dispute that the merger constituted a "liquidation" under Article IV, § D(2), that required payment to the shareholders. Instead, the critical point of contention is whether the conversion prior to the merger of the preferred shares into common shares – an action which Investcorp had the right to take under the Articles of Incorporation – can be considered part and parcel of a "liquidation, dissolution, or winding up" of the corporation. As the Minority Shareholders point out, the Articles of Incorporation shed little light on whether a stock conversion as a negotiated part of a merger agreement could constitute a "liquidation" event. The Minority Shareholders also contend, based on the sales scenario summaries presented to them in 2011 and 2012, that the Counterdefendants considered the proposed merger with Westell to be an event that required payment of the liquidation preference.

In order to prevail on their motion, the Counterdefendants must prove both that the Minority Shareholders have: (1) no legal basis for considering the stock conversion as part of the Kentrox/Westell merger and, therefore, part of a "liquidation, dissolution or winding up" for purposes of calculating the payout due to the Minority Shareholders under the Articles of Incorporation; and (2) no viable claim that Investcorp waived its right to convert the preferred

stock to common stock.  As discussed below, this court concludes that the Counterdefendants

cannot, at this juncture, prevail on either issue.

### 2  <u>The Step Transaction Doctrine</u>

The Minority Shareholders allege that the stock conversion and Kentrox/Westell merger

were steps in a related series of transactions that together constituted a "liquidation, dissolution

or winding up" under the Articles of Incorporation.  The parties are at loggerheads over whether

the step transaction doctrine applies in this case.

The step transaction doctrine exists to prevent parties from dividing a transaction into

steps to avoid an obligation that would arise if the transaction occurred all at once.  When it is

applied, two or more transactions are "combined into one for purposes of determining the rights

of the [parties] . . . ."  *Noddings Inv. Grp, Inc. v. Capstar Commc'ns, Inc.*, No. CIV A 16538,

1999 WL 182568, at *7 (Del Ch Mar. 24, 1999).  Here the Minority Shareholders allege that the

Counterdefendants colluded to avoid payment of the liquidation preference to them and instead

to shift the proceeds of the Kentrox/Westell merger to employees, senior management and

executive management, to the detriment of the Minority Shareholders.  They seek to have the

stock conversion and the merger collapsed into a single transaction and assert that, so collapsed,

that transaction constituted a "liquidation, dissolution or winding up" for purposes of calculating

the payment to which they are entitled as a result of the merger.

The Counterdefendants assert that the step transaction doctrine generally does not apply

outside of the areas of taxation and fraudulent conveyance, and point out that no Oregon court

has ever applied the doctrine outside of those two areas.  True, the Oregon cases discussing the

step transaction doctrine arise in the taxation context.  However, the Counterdefendants have

cited no Oregon case holding that the step transaction doctrine cannot be applied outside of those

areas.  Moreover, the Delaware Chancery Court has cogently explained that the step transaction

doctrine – while admittedly originating in taxation cases – has been applied in other contexts as a

legitimate tool of a court acting in equity:

> The Defendant also argues that the step transaction doctrine is
> limited in application to tax treatment and fraudulent conveyances.
> Although the Defendant is correct that the step transaction doctrine
> originated in tax cases to allow the substantive realities of a
> transaction to determine the tax consequences, the doctrine has
> also been applied in bankruptcy court to determine fraudulent
> conveyances, and this Court has extended the doctrine to
> partnership agreements, warrant agreements, and recapitalization
> transactions.  The governing principle in each of these cases is the
> same:  transactional formalities will not blind the court to what
> truly occurred.  Indeed, it is the very nature of equity to look
> beyond form to the substance of an arrangement.  The Defendant
> has not cited any cases suggesting that this principle should not
> carry over to contractual arrangements outside of those already
> addressed by this Court and others.

*Coughlan v. NXP B.V.*, Civ. No. 5110-VCG, 2011 WL 5299491, at *9 (Del Ch Nov. 4, 2011)

(citations omitted).[10]

Kentrox is an Oregon corporation and its Articles of Incorporation repeatedly refer to the

Oregon Business Corporation Act, ORS Chapter 60.  Arts. III, VII, & VIII.  The law of the state

of incorporation normally governs the determination of rights under a corporate charter.  *Edgar*

*v. MITE Corp.*, 457 US 624, 645 (1982) (citation omitted) (discussing internal affairs doctrine).

However, as do courts in many other states, Oregon courts often look to Delaware law for

guidance in construing Oregon corporate law when the relevant issue in Oregon corporate law is

"undeveloped."  *Plumbers Local No. 137 Pension Fund v. Davis*, Civ. No. 03:11-633-AC, 2012

WL 104776, at * 3 n3 (D Or Jan. 11, 2012), *Report and Recommendation Adopted*, 2012 WL

602391 (D Or Feb. 23, 2012).  Nothing in Oregon law precludes the application of the step

---

[10]  The Delaware Supreme Court Rules and Delaware Chancery Court Rules permit citation to unpublished opinions.  Del Supr
Ct R 93(d) & Del Ch Ct R 171(i).

transaction doctrine outside the areas of taxation and fraudulent conveyance.  Barring some authority to the contrary, this court sees no reason why the step transaction doctrine may not be applied in this case.  At the same time, there is a dearth of case law in Oregon on the subject, leaving the parties and this court to look elsewhere for guidance.

The Counterdefendants argue that whether the stock conversion may be considered part of the merger is case is controlled by *Alta Berkeley VI CV v. Omneon, Inc.*, 41 A3d 381 (Del Mar. 5, 2012).  Parallels certainly exist between *Alta Berkeley* and this case.  The parties point to language differences between the Kentrox charter and Omneon charter at issue in *Alta Berkeley*, and come to diametrically opposed views on whether the language of the Kentrox charter is broader or narrower.  The Minority Shareholders note that, unlike the Omneon charter, the Kentrox charter lacks language which strictly limits the triggering of a preferential payment to instances of changes in stock ownership.  They assert that the lack of such language allows for triggering of the preferential payment by events which do not involve such ownership changes.  Meanwhile, the Counterdefendants point out that the Omneon charter's definition of "liquidation" encompassed "related transactions," opening the door to the argument that a liquidation might include a stock conversion.

The Counterdefendants also argue that it conceptually makes no sense to fuse transactions undertaken by different parties.  While that may well be the case absent any allegations of joint action, it makes sense here. The premise of the counterclaims is that the Counterdefendants colluded to deprive the Minority Shareholders of a preferential payment, providing millions of dollars of financial benefit to senior and executive management at the expense of the Minority Shareholders.  Radhakrishnan, a principal of Investcorp, represented Investcorp on Kentrox's Board of Directors.  The Counterdefendants allegedly led the Minority

Shareholders to believe that the right of conversion to common stock would not be exercised in connection with a sale, but through a scheme in which they acted jointly, the Counterdefendants structured the sale in such a way as to deprive the Minority Shareholders of their liquidation preference.  The net effect was that the Minority Shareholders was the only group of investors to lose money as a result of the merger.

Ultimately, application of the step transaction doctrine to the stock conversion is a question of fact which cannot be decided on a motion to dismiss or for judgment on the pleadings.  At this juncture, this court merely concludes that the Minority Shareholders are not precluded from raising the step transaction doctrine either because of asserted restrictions on its application or on the precedential value of *Alta Berkley*.  Accordingly, to the degree Kentrox seeks judgment on the First Claim for Relief and the other Counterdefendants seek partial dismissal of the Amended Counterclaim on this basis, the motion should be denied.

### 2. **Waiver / Estoppel**

The Counterdefendants acknowledge that, in order to succeed on their motion, they must also prevail on their contention that Investcorp (the majority shareholder of the preferred stock) did not waive and should not be estopped from exercising its contractual right to convert preferred stock.  The Minority Shareholders allege that the Counterdefendants led them to believe the right of conversion to common stock would not be exercised in connection with a sale.  In particular, the Minority Shareholders allege that in 2011 and 2012, PowerPoint slides setting forth the anticipated sales scenarios were distributed to them and that Kentrox, Investcorp, and Radhakrishnan each knew of, approved, and ratified the statements in those PowerPoint slides.

The Counterdefendants argue that these allegations are insufficient to prove either estoppel or waiver by noting that the PowerPoint slide that is attached to the pleadings (Amended Counterclaim, Ex. A) only identifies "hypothetical" transactions and by arguing that neither Investcorp nor Kentrox told the Minority Shareholders that their stock would not be converted.

This court agrees with the Minority Shareholders that this issue cannot be decided at this juncture.  For purposes of the present motion, this court must accept the allegations of the Amended Counterclaim as true and construe all inferences in favor of the Minority Shareholders. As detailed above, the Minority Shareholders allege that Investcorp and its management knew of, approved, and ratified statements that the sale to Westell would include the preferential payment to preferred shareholders, all the while working behind the scenes with Kentrox management to structure a merger that would deny that payment to the disproportionate disadvantage of Minority Shareholders.  Broadly read, the Amended Counterclaim alleges both written and oral statements because it discusses both the PowerPoint slides and the fact that the Minority Shareholders were "told" that they could expect the preferential payment in the event of a sale at the prices specified in the PowerPoint presentation.  *Id*, ¶ 33.  The Minority Shareholders further allege reliance on those statements to their detriment.

Without a factual record to test these allegations, this court is hard-pressed to rule that, as a matter of law, the Minority Shareholders will be unable to show that Investcorp waived its right to convert the preferred stock to common stock or that it should be estopped from asserting that right.  Factual issues are critical to a successful assertion of waiver and estoppel by conduct. *See Asbury Transp. Co. v. Consolidated Freightways Corp. of Del., Inc.*, 263 Or 53, 63, 501 P2d 321, 325 (1972) (citations omitted) (explaining that waiver, estoppel, accord and satisfaction, and

mitigation of damages "all present questions of fact"); *see also Great Am. Ins. Co. v. Gen. Ins. Co. of Am.*, 257 Or 62, 73, 475 P2d 415, 420 (1970).  Particularly here with allegations of collusion, the better course is to test the claims upon a full factual record.

## RECOMMENDATION

For the reasons set forth above, Plaintiff's and Counterclaim-Defendants' Motion for Partial Dismissal and for Partial Judgment on the Pleadings (docket #18) should be DENIED.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due Tuesday, May 27, 2014.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.  If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED May 9, 2014.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge